IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| LOCHNER TECHNOLOGIES, LLC., | § § § § § | |
| Plaintiff, | § | |
| v. | § | CASE NO. 2:09-CV-177-CE |
| | § | |
| HEWLETT-PACKARD COMPANY, ET AL. | § § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

**I.    Introduction**

The present action is brought by Lochner Technologies, LLC ("Lochner") against Hewlett Packard Company ("HP")[1] for infringement of U.S. Patent No. 7,035,598 (the "'598 Patent"). This order addresses the parties' various claim construction disputes. The order will first briefly address the technology at issue in the case and then turn to the merits of the claim construction issues.

**II.    Background of the Technology**

The '598 patent "…relates to microcomputers, or personal computers, as well as larger computers, and is particularly concerned with improving the freedom of movement of the users of such computers and enhancing the possibilities of sharing of a single computer system by a plurality of users." '598 Patent at 1:15-20. The abstract of the '598 Patent states that these objectives are achieved by a computer system composed of the following:

---

[1] International Business Machine Corporation ("IBM") filed a notice of settlement on October 8, 2010 (Dkt. No. 104). As such, this order does not address any claim construction issues that were specifically limited to disputes between Lochner and IBM.

1

a storage and control unit including components for receiving and processing input data signals and components for producing output signals based on the input data signals; an input/output unit including components for generating input signals and output components for providing a display based on output signals; and a wireless link between the units for conducting data signals from the components for generating input signals to the components for receiving and processing input signals and for conducting output signals from the components for producing output signals to the output components.

Claim 1 of the '598 Patent is reproduced below:

A wireless computer system comprising:

a base storage and control system including:

a processor, receiving and using an input signal in real-time, the input signal being for use in interacting with an application program being executable at the base storage and control system,

a non-volatile memory,

a display element producing an output signal based on the input signal and execution of the application program, said output signal being produced in bursts, with delays between the bursts, during which delays, no information is transmitted, and

a wireless transceiver that wirelessly communicate the display output signal when produced;

at least one portable input-output system for use with the base storage and control system, the portable input-output system including:

a wireless transceiver, which wirelessly communicates the input signal to the base storage and control system and wirelessly receives the display output signal from the base storage and control system,

a user interface, allowing inputting an information item and generating an input signal corresponding to the information item the input signal being wirelessly communicable in real-time to the base storage and control system to interact with the application program being executable at the base storage and control system, and

an arrangement for providing a continuously-displayed full screen display using the display output signal received in bursts to generate a portion of the full screen display corresponding to the display output signal.

### III. General Principles Governing Claim Construction

Claim construction is an issue of law for the court to decide. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

"A claim in a patent provides the metes and bounds of the right which the patent confers on the patentee to exclude others from making, using or selling the protected invention." *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1257 (Fed. Cir. 1989). To ascertain the meaning of claims, the court must look to three primary sources, including the claims, the specification, and the prosecution history. *Markman*, 52 F.3d at 979; *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc).

The Federal Circuit has consistently reiterated that "the *claims* of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips*, 415 F.3d at 1312 (emphasis added) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To that end, the words used in a claim are generally given their ordinary and customary meaning. *Id*. The ordinary and customary meaning of a claim term "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id*. at 1313.

The primacy of claim terms notwithstanding, the Federal Circuit has made it clear that "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id*. While the claims themselves provide guidance as to the meaning of particular terms, those terms are part of "a fully integrated written instrument." *Id*. at 1315 (quoting *Markman*, 52 F.3d at 978). Therefore, "the construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in

the end, the correct construction." *Id.* at 1316 (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)). The specification may act as a sort of dictionary, which explains the invention and may define terms used in the claims. *Markman*, 52 F.3d at 979. Furthermore, the specification may also limit the scope of the claimed invention. *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000). However, it is the function of the claims, not the specification, to set forth the limits of the patentee's invention, and therefore, particular embodiments appearing in the specification will not be read into the claims when the claim language is broader than the embodiments. *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc); *Electro Med. Sys., S.A. v. Cooper Life Sci., Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

The prosecution history also plays an important role in claim interpretation. Like the specification, the prosecution history helps to demonstrate how the inventor and the PTO understood the patent. *Phillips*, 415 F.3d at 1317. Because the file history, however, "represents an ongoing negotiation between the PTO and the applicant," it may lack the clarity of the specification and thus be less useful in claim construction proceedings. *Id*. Nevertheless, the prosecution history is intrinsic evidence that is relevant to the determination of how the inventor understood the invention and whether the inventor limited the invention during prosecution by narrowing the scope of the claims. *Id.*

The Federal Circuit, however, has rejected any claim construction approach that sacrifices the intrinsic record in favor of extrinsic evidence, such as dictionary definitions or expert testimony. *Id*. at 1321. Reliance on extrinsic evidence at the expense of the specification has the effect of "focus[ing] the inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent." *Id*. at 1321.

The patent-in-suit includes claim limitations that fall within the scope of 35 U.S.C. § 112 ¶ 6. The first step in construing a means-plus-function limitation is to identify the recited function. *See Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999). The second step in the analysis is to identify the structure in the specification that corresponds to the recited function. *Id.* The "price that must be paid" for use of means-plus-function claim language is the limitation of the claim to the means specified in the written description and equivalents thereof. *See O.I. Corp. v. Tekmar Co.*, 115 F.3d 1576, 1583 (Fed. Cir. 1997). The "structure disclosed in the specification is 'corresponding' structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim." *Med. Instrumentation and Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1210 (Fed. Cir. 2003) (citing *B. Braun v. Abbott Labs*, 124 F.3d 1419, 1424 (Fed. Cir. 1997)). Bearing these principles in mind, the Court now turns to the terms in dispute.

**IV.     Terms in Dispute in the '598 Patent**

    **A.     Arrangement for Providing**

| Claim Language | Lochner's Proposed Construction | HP's Proposed Construction |
|---|---|---|
| Claim 1<br><br>"an **arrangement for providing** a continuously-displayed full screen display using the display output signal received in bursts to generate a portion of the full screen display corresponding to the display output signal" | Subject to 35 U.S.C. § 112 ¶ 6.<br><br>*Function:* providing a continuously-displayed full screen display using the display output signal received in bursts to generate a portion of the full screen display corresponding to the display output signal<br><br>*Structure:* the graphics card and the display device described at 5:37-49. | Subject to 35 U.S.C. § 112 ¶ 6.<br><br>*Function:* providing a continuously-displayed full screen display using the display output signal received in bursts to generate a portion of the full screen display corresponding to the display output signal<br><br>*Structure*: Indefinite. |

| Claim Language | Lochner's Proposed Construction | HP's Proposed Construction |
|---|---|---|
| Claim 12<br><br>"an **arrangement for providing** a continuously-displayed full screen display that differs from a previously-received full screen display, using the display output signal received in bursts to generate a portion of the full screen display corresponding to the display output signal" | Subject to 35 U.S.C. § 112 ¶ 6.<br><br>*Function:* providing a continuously-displayed full screen display that differs from a previously-received full screen display, using the display output signal received in bursts to generate a portion of the full screen display corresponding to the display output signal<br><br>*Structure:* the graphics card and the display device described at 5:37-49. | Subject to 35 U.S.C. § 112 ¶ 6.<br><br>*Function:* providing a continuously-displayed full screen display that differs from a previously-received full screen display, using the display output signal received in bursts to generate a portion of the full screen display corresponding to the display output signal<br><br>*Structure:* Indefinite. |

The Court concludes that the function of the "arrangement for providing" terms is "providing a continuously-displayed full screen display [that differs from a previously-received full screen display] using the display output signal received in bursts to generate a portion of the full screen display corresponding to the display output signal."[2] '598 Patent 6:34-38; 8:34-41. Although it is a close question, the Court further concludes that the specification discloses sufficient structure to perform the function. As such, the Court concludes that the "arrangement for providing" terms are not indefinite and that, as proposed by Lochner, the "graphics card" and the "display device" described at Column 5, lines 37-49 are the structures corresponding to the recited function.

### 1. Parties' Construction Arguments

The parties do not dispute that the function of the "arrangement for providing" term is "providing a continuously-displayed full screen display using the display output signal received in bursts to generate a portion of the full screen display corresponding to the display output

---

[2] The bracketed language appears only in the function of the "arrangement for providing" term appearing in Claim 12.

signal." However, they advance different structures corresponding to the function. Lochner argues that the specification discloses structure corresponding to the "arrangement for providing" terms at Column 5, lines 37-49. Lochner argues that this passage clearly links the "graphics card" and the "display device" to the function recited in the claims.

In response, HP makes the following argument: (1) the claimed "arrangement" must both "provid[e] a continuously displayed full screen display" and "us[e] the display output signal received in bursts to generate a portion of the full screen display corresponding to the display output signal;" (2) Lochner relies on the embodiment described at Column 5, lines 37-49 to support its argument that the structure needed to perform both of these functions is the "graphics card" and the "display device;" (3) in order for the cited portion of the specification to perform both functions, it must disclose a structure for converting the signal received by the graphics card into a form that the graphics card can use; (4) however, there is no such converting structure disclosed in the specification and as such, the "arrangement" that Lochner proposes cannot "us[e] the display signal received in bursts to generate portions of a full screen display corresponding to the display output signal;" and (5) finally, considering that Lochner has failed to identify the structure necessary to perform both of the recited functions, the "arrangement for providing" claims are indefinite.

In reply, Lochner argues that the claims are not indefinite because the specification need only disclose structure necessary to perform the recited functions – not the additional function of converting the signal received by the graphics card into a form that the graphics card can use. According to Lochner, the appropriate structure must only "us[e] the display output signal" in some form and, since the "graphics card" does just that, the specification discloses the structure necessary to perform the recited function.

2.  **Analysis**

It is well-settled that when the specification does not adequately disclose structure that corresponds to the claimed function, the patentee fails to distinctly claim the invention as required by § 112 ¶ 2, which renders the claim invalid for indefiniteness. *Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1382 (Fed. Cir. 2009) (quoting *In re Donaldson Co.*, 16 F.3d 1189, 1195 (Fed. Cir. 1994) (en banc)). To conclude that a mean-plus-function claim is invalid because it lacks structure, the court must find by clear and convincing evidence that the specification fails to disclose structure that could be understood by a person of ordinary skill in the art as being able to perform the recited function. *Budde v. Harley-Davidson, Inc.*, 250 F.3d 1369, 1376-77 (Fed. Cir. 2001). Although corresponding structure need not include all things necessary to enable a claimed invention to work, it must include the structure necessary to perform all recited functions. *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 296 F.3d 1106, 1119 (Fed. Cir. 2002).

HP has not meet its burden to show that the "arrangement for providing" claims lack sufficient structure to enable one of ordinary skill in the art to perform the recited functions. The portion of the function at issue is "using the display output signal," and the structure corresponding to this function merely needs to be able to use the "display output signal…to generate a portion of the full screen display." Nothing in the claim specifies what form the "display output signal" must be in when it is used to generate the full screen display. Therefore, the specification need only disclose a structure able to use the "display output signal" in some form, and Column 5, lines 37-49 clearly links the "graphics card" to the function of "using the display output signal." As such, the Court concludes that the structures corresponding to the

functions recited in the claims are the graphics card and the display device described at Column 5, lines 37-49.

B. **Display Element**

| Claim Language | Lochner's Proposed Construction | HP's Proposed Construction |
|---|---|---|
| Claim 1 and 12<br><br>"a **display element** producing an output signal based on the input signal and execution of the application program, said output signal being produced in bursts" | No construction necessary.<br><br>If construed, the claim element should be construed as:<br><br>an interface device producing an output signal based on the input signal and execution of the application program, said output signal being produced in bursts. | a special interface card producing a serial bit stream output signal based on the input signal and execution of the application program, said output signal being produced in bursts |

The prosecution history read as a whole limits the scope of the '598 Patent's claims to inventions utilizing "burst" transmission. However, Lochner did not make an express disavowal of "burst" embodiments utilizing a structure other than a "special interface card" that produces "a serial bit stream." As such, the Court refuses to read HP's proposed limitations into the claim language because "particular embodiments appearing in a specification will not be read into the claims when the claim language is broader than such embodiments." *Electro*, 34 F.3d at 1054. Rather, the Court agrees with Lochner and concludes that the "display element" is "an interface device producing an output signal based on the input signal and execution of the application program, said output signal being produced in bursts."

1. **Parties' Construction Arguments**

First, Lochner argues that the "display element" terms need not be construed, but Lochner does not provide the Court with any explanation as to why the Court should decline to

9

construe the terms. Furthermore, the fact that Lochner has proposed three different constructions of these terms throughout the claim construction process demonstrates that the "display element" terms do require construction.

Second, the parties agree that the "display element" is an "interface device," but HP seeks to insert a limitation requiring that the "interface device" be a "special interface card" that produces only "serial bit stream" output signals. According to HP, these limitations are necessary because: (1) the prosecution history of the '598 Patent limits the claims to the "burst" embodiment described in the specification; and (2) the "burst" embodiment teaches that the "display element" is a "special interface card," which converts parallel data bits and addresses into "a serial bit stream."

Although the '598 Patent's specification describes three different embodiments, HP argues that the prosecution history unambiguously limits the claims to the embodiment using "burst" transmission, which is described at Column 5, line 21-49. For example, to overcome a rejection of all of the '598 Patent's claims based on the prior art Lochner argued the following:

> [n]umerous claims stand rejected under 35 USC 102 and/or 103 as being unpatentable over Auer, and/or Tymes. In response, and after reviewing the case in detail, Applicants have herewith substantially narrowed the issues. This has been done by deleting the independent claims 22 and 23, and amending the remaining independent claims 1 and 21 to recite the subject matter of the embodiment described on page 13, lines 5-15, specifically, that the information for display is sent in bursts to update the display, but yet the displays provides a continuous display of the information. This is in no way taught or suggested by any of the cited prior art, and hence this obviates the rejection.

April 22, 2004 Amendment at 10, attached as Ex. B to Defendants' Brief Regarding Claim Construction, Dkt. No. 100. Column 5, lines 31–42 of the '598 Patent correspond to page 13, lines 5–15 of the patent application. Therefore, according to HP, Lochner's statements to the PTO narrowed all of the '598 Patent's claims to require "burst" transmission. Moreover, HP

contends that Lochner demonstrated his intent to limit the "display element" to require "burst" transmission by amending the claim as follows:

> ~~an arrangement for providing~~ a display <u>element producing an</u> output signal based on the input signal and execution of the application program, <u>said output signal being produced in bursts, with delays between the bursts, during which delays, no information is transmitted</u>.

*Id.* at 2. HP thus concludes that since the "burst" embodiment teaches that the "display element" is a "special interface card," which converts the parallel data bits and addresses into "a serial stream," the "display element" term must be so limited.

In response, Lochner argues that there is no basis for reading these structural limitations into the claim terms. Lochner notes that nowhere in the prosecution history did he unambiguously disclaim all embodiments that could produce output signals in bursts other than a special interface card. Furthermore, Lochner argues that even if the claims are limited to the "burst" embodiment, HP has misconstrued the effect of such a limitation by contending that the claims are also limited to the particular structures disclosed in connection with the "burst" embodiment.

### 2. Analysis

"One of the cardinal sins of patent law [is] reading a limitation from the written description into the claims." *Phillips*, 415 F.3d at 1319-1320 (quoting *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1340 (Fed. Cir. 2001)). However, although it is generally true that the claims of a patent will not be construed as limited to one embodiment, a construction limiting the claims to a particular embodiment is appropriate where "the prosecution history clearly indicate[s] that the invention encompasses no more than that confined structure or method." *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1289 (Fed. Cir. 2009) (en banc).

In this case, the claim language and the prosecution history provide strong support for HP's argument that the claims of the '598 Patent should be limited to inventions utilizing "burst" transmission. In response to a §102/103 rejection, Lochner represented to the PTO that he "substantially narrowed the issues" by deleting claims and by "amending the remaining independent claims…to recite the subject matter" of the "burst" transmission embodiment. Furthermore, during prosecution, Lochner added claim language to the "display element" limitation that specifically invoked "burst" transmission. Accordingly, Lochner limited the '598 Patent's claims to inventions utilizing "burst" transmission.

Nevertheless, HP has offered no support for the proposition that limiting a claim to a particular subject matter disclosed in the specification (e.g., "burst" transmission) necessarily limits the claim to the structures disclosed in that embodiment (e.g., "special interface card producing a serial bit stream"). In fact, the Federal Circuit has "rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment." *Phillips*, 415 F.3d at 1323. Although the specification may indicate that certain embodiments are preferred, "particular embodiments appearing in a specification will not be read into the claims when the claim language is broader than such embodiments." *Electro*, 34 F.3d at 1054. In this case, Lochner has not "clearly indicate[d] that the invention encompasses no more than…[the]…structure[s]" disclosed in the "burst" embodiment. *Abbott Labs.*, 566 F.3d at 1289. Significantly, Lochner did not rely on either the presence of the special interface card or the function of the special interface card (i.e., converting parallel signals to serial ones) to overcome prior art. Rather, the requirement of "burst" transmission alone was sufficient to overcome the prior art. Thus, the Court adopts Lochner's proposed construction of "display element" as meaning "an interface device producing an output

signal based on the input signal and execution of the application program, said output signal being produced in bursts." This construction avoids reading preferred embodiments used to achieve "burst" transmission in to the claim when Lochner has not expressly disavowed other possible embodiments that could achieve "burst" transmission.

### C. Input-Output System

| Claim Language Example | Lochner's Proposed Construction | HP's Proposed Construction |
|---|---|---|
| Claim 1, 10, 12<br><br>1. A wireless computer system comprising:<br>….<br>at least one portable **input-output system** for use with the base storage and control system, the portable **input-output system** including:<br><br>a wireless transceiver…<br><br>a user interface…, and<br><br>an arrangement for providing a continuously-displayed full screen display…. | No construction necessary.<br><br>If construed, "input-output system" should be construed as it is defined in the claims in which it appears. | A device dedicated to only I/O functions (i.e., not for non-volatile data storage or execution of application programs).<br><br>OR<br><br>A device having input-output functionality that does not perform nonvolatile data storage or execution of application programs. |

The Court concludes that Lochner never clearly disavowed the possibility of the "input-output system" performing functions additional to input-output functions. As such, the Court refuses to adopt HP's proposed limitations. Rather, the Court concludes that "input-output system" refers to "a system having the limitations called out in the remainder of the claim."

#### 1. Parties' Construction Arguments

Lochner argues that the term "input-output system" is defined in the claims, and therefore, the term is self-defining. As such, Lochner contends that the Court should not construe the term, or, alternatively, the Court should adopt the construction provided by the

claims. HP, on the other hand, urges the Court to import negative limitations on the functionality of the "input-output system" – namely, that the system: (1) be dedicated to only input-output functions; and (2) not perform nonvolatile data storage or execution of application programs. HP's proposed construction of "input-output system" is drawn from a statement Lochner made a number of times in the prosecution histories of the '598 Patent family. In remarks to the examiner after a rejection, Lochner emphasized to the PTO "the fundamental nature of his invention as a two part computer system comprising: (1) a base storage and control unit ... and (2) a simple, lightweight remote input/output unit essentially dedicated to only I/O functions (i.e., not for non-volatile data storage or execution of application programs)." July 26, 1993 Amendment After Final Rejection at 4-5, attached as Ex. H to Defendants' Brief Regarding Claim Construction, Dkt. No. 100. This "essentially dedicated" phrase is repeated in the parent application and the related application to describe the "input-output system" at least four times. Furthermore, HP argues that Lochner specifically distinguished prior art on the basis that the art did not teach a device limited to input-output functions, but instead taught a computer capable of input-output functionality among other functionality:

> Sandstedt totally fails to teach or suggest the basic concept claimed by applicant: a two-part computer system [including] … a simple, lightweight and inexpensive remote input/output unit essentially dedicated to only I/O functions (i.e., not for non-volatile data storage or execution of application programs). … Sandstedt [teaches] a portable terminal 12 that is essentially a self-contained computer having a microprocessor, RAM, and ROM. … Sandstedt did not contemplate using a simple input-output unit essentially capable of only input and display of data.

Thus, according to HP, during prosecution Lochner specifically disclaimed an "input-output system" that performs functions additional to input-output functions.

In response, Lochner highlights the fact that the statements relied on by HP all include the modifier "essentially" to explain what the "input-output system" does. Therefore, according

14

to Lochner, the "input-output system" should not be limited to performing only input-output functions because there is no express disavowal of other possible functions. HP counters that, from the context and the meaning of the term "essentially," it is apparent that Lochner used the term "essentially" to emphasize that the limitations of the input-output unit are essential to the invention. Lochner, however, contends that the specification undermines HP's interpretation of the word "essentially." The specification states that the input-output unit is:

> composed essentially of three components, a keyboard 10, a monochrome or color display device 12 and a wireless transceiver device 14. Unit 2 will further be composed of a power supply (not shown) which may be connected to the building mains via a plug-in power cord, or which may be battery operated…. Unit 2 can be provided with interfaces for connection of alternate input devices, such as a mouse, a track ball, or a pattern recognition pad.

'598 Patent at 3:7-19. According to Lochner, if "essentially" were being used by the inventor as a strict limitation, then this portion of the specification would make no sense. Furthermore, Lochner points to prosecution history and prior art distinctions that also undermine HP's understanding of the word "essentially."

Finally, HP contends that use of the term "i.e." to describe what the "input-output system" does not do is definitional in nature. Therefore, HP argues that when Lochner stated that the "input-output system" is "essentially dedicated to only I/O functions (i.e., not for non-volatile data storage or execution of application programs)," Lochner expressly disclaimed any input-output unit that performs non-volatile data storage or execution of application programs. Thus, in the alternative, HP urges the Court to construe "input-output system" as a "device having input-output functionality that does not perform nonvolatile data storage or execution of application programs."

2. Analysis

The Court rejects HP's proposed limitations because Lochner never clearly disavowed the possibility of the "input-output system" performing functions other than input-output functions. The fact is that Lochner has been consistent throughout and has never expressly limited the "input-output system" as HP contends. Furthermore, HP's understanding of the word "essentially" is incorrect in light of other uses of the term in the specification. Moreover, HP's reliance on the "i.e." term to import its proposed negative limitations into the claims is unwarranted. As this Court recognized in *Tidel*, the Federal Circuit has held that "i.e." can define the meaning of a term that it immediately follows. *Abbott Labs. v. Novopharm Ltd.*, 323 F.3d 1324, 1330 (Fed.Cir.2003); *Tidel Eng'g L.P. v. Fire King Int'l, Inc.*, 613 F. Supp. 2d 823, 829 (E.D. Tex. 2009) (use of "i.e." indicates a definition of a term). However, considering that the Court has rejected the "only I/O functions" limitation, that term will not even be included in the construction of "input-output system." And therefore, it would be nonsensical for the Court to read the "i.e." definition immediately following the "only I/O functions" limitation into the claim terms through its construction.

The Federal Circuit's opinion in *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422 (Fed. Cir. 2000) is instructive in this case. In *IMS Tech.*, the court was reviewing a construction of the phrase "control apparatus" in the preamble of the patent-in-suit. *Id.* at 1427. The court determined that the phrase "merely [gave] a descriptive name to the set of limitations in the body of the claim that completely set forth the invention." *Id.* at 1434. Therefore, the court determined that the claim would be infringed by an apparatus encompassing all of the limitations in the body of the claim. *Id.* As in *IMS Tech.*, the phrase "input-output system" merely gives a descriptive name to the set of limitations set forth in the body of the claim. As such, the Court concludes

that "input-output system" refers to "a system having the limitations called out in the remainder of the claim."

## V.  CONCLUSION

The Court adopts the constructions set forth in this opinion for the disputed terms of the '598 Patent.  The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury.  Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in the presence of the jury.  Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

It is so ORDERED.

SIGNED this 20th day of October, 2010.

_____
CHARLES EVERINGHAM IV
UNITED STATES MAGISTRATE JUDGE